WILLIAM FELLOWS, impleaded with JOHN FELLOWS, THOMAS FELLOWS AND ROSWELL DAY, Appellant,
*against*
ABIGAIL FELLOWS, Administratrix, and JEREMIAH RUNDLE, Administrator of EZRA FELLOWS, deceased.

The bill charged, that several defendants combined and confederated among themselves, and with the debtor of the complainants, against whom they had obtained a decree for their debt, to defraud the complainants by taking a conveyance and transfer to each, in separate parcels, of all the debtor's real and personal property, without consideration, and with intent to avoid execution upon the decree ; and that they accordingly received such conveyances and transfer of all the debtor's property, which they held for him, or for their own use. To this bill, one of the defendants answered, denying the combination between himself and the other several alienees and transferees of the debtor's property ; and demurred to the residue of the bill, because it was for several distinct matters and causes, in many of which the defendant, thus answering and demurring, was not interested or concerned ; *held*, that the defendants were properly joined, and that the demurrer should be overruled.

This was *held*, as well because there was one connected interest, centering in the point in issue in the cause, or one common point of litigation, as that the joinder tended to prevent multiplicity of suits.

The general rule is, that where a bill is filed concerning things of distinct natures, against several persons, it is demurrable ; but unconnected parties may join in a suit, when there is one connected interest among them all, centering in the point in issue in the cause.

An administrator who purchases land upon judgment or decree in favor of his intestate, holds it as a trustee, and may be compelled to account for the land itself to his *cestuis que trust.*

He may in his representative character, call in the aid of a court of equity to perfect his title. Per Woodworth, J.

Of the power of a court of chancery to reach a debtor's property in the hands of third persons. Per Woodworth, J.

It is a favorite object of equity, to prevent multiplicity of suits. Hence all persons interested are to be made parties. Creditors may join in com-

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

pelling executors, &c. to account, or one creditor, or more, may sue for the benefit of the whole. Per Sutherland, J.

But equity will not permit several plaintiffs by one bill, to demand several matters perfectly distinct and unconnected, against one defendant ; nor one plaintiff to demand several matters of different natures against several defendants ; otherwise, if the defendants have a common interest, centering in the point in issue in the cause, or where one general right is claimed by the bill. Illustration of these propositions. Per Sutherland, J.

It is not sufficient that the parties have an interest in some one, or more items in an account charged. Per Sutherland, J.

The rule that multifarious matters shall not be joined in the same suit, is a rule of convenience. Per Colden, Senator.

The rule in *Brinkerhoff* v. *Brown*, (6 John. Ch. Rep. 139,) " that a bill may be filed against several persons, relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the plaintiffs, and in which all the defendants were, more or less, concerned, though not jointly in each act," considered, recognized and applied. Per Savage, Ch. J., Sutherland, J., and Colden, Senator.

APPEAL from the Court of Chancery. On the 4th February, 1823, the respondents filed their bill in that Court, against William Fellows, the appellant, John Fellows, Thomas Fellows, and Roswell Day, charging that on the 24th November, 1815, Ezra Fellows, the intestate, was seised of 214 acres of land in Stillwater, Saratoga county, 150 acres of which were encumbered with a life lease from the intestate to his father, John Fellows, and a part by a mortgage of $700, and another part by a mortgage of $55 ; and the whole by a judgment of $200. That before the 24th November, 1815, the intestate with John Fellows, his father, and Roswell Day, two of the defendants below, agreed that the intestate should convey to Day all his (the intestate's) right in the 214 acres ; that Day should pay the incumbrances, and work the 150 acres on shares for the father ; and should pay the intestate $3500.

That shortly before the 24th November, 1815, one Martin Adsit proposed to purchase the 214 acres, for $8239, payable thus : $2000 in 10 days, $3000 the 15th May (then) next, and the residue (to be secured by bond and mortgage on the premises) in annual payments of $500 each, with interest. That on the 24th November, 1815, it was agreed between the intestate and his father, with Day's assent,

that the 214 acres should be sold and conveyed by the in testate to his father by quit claim deed ; who should convey to Adsit, and that the intestate should receive for his proportion of the purchase money, $1000 of the first payment, $1000 of the second, and the first, third and fifth instalments of $500 each, with interest, to be secured by the bond and mortgage of Adsit. That the intestate, on the 24th November, 1815, quit claimed accordingly. That he received the two first payments of $1000 each. That on the 24th November, the father gave the intestate a written memorandum of the agreement, as to the three last instalments, which he was to receive, promising to pay the $1500 out of Adsit's bond and mortgage, as the instalments should be received by him in their turn, or that the intestate might take Adsit's bond and mortgage for his share, in his own name.

That the father conveyed to Adsit, taking the bond and mortgage in his own name, for the whole purchase money, except what had been paid, without the intestate's knowledge or consent, with intent to defraud him of the $1500, his due.

That in further pursuance of his fraudulent intent, the father, on the 17th March, 1817, cancelled and delivered up to Adsit, his bond and mortgage, and received as a substitute, the promissory note of Raymond and Jesse Adsit, sons of Martin Adsit, the mortgagor, payable to John Fellows (the father) or bearer, with interest, at the several times when the instalments would fall due ; which notes the drawers secured by bond and mortgage to the intestate's father, on 107 acres of the farm sold by him to M. Adsit ; all without the intestate's consent, and in violation of the original trust and agreement, &c.

That on the 15th February, 1819, the intestate filed his bill in the Court of Chancery against the father, who was, on the 16th February, served with an injunction forbidding him to transfer the notes ; that on the 10th November, 1820, Ezra Fellows, the intestate, dying, the respondents obtained letters of administration. That on the 30th December, 1820, they filed their bill of revivor ; and on the 17th May, 1821,

the suit was revived by an order of the Court of Chancery.
That on the 27th April, 1822, the Court of Chancery rendered a final decree, declaring that the intestate was entitled to the $1500, in question, with interest; that the father had violated his trust in giving up the bond and mortgage to be cancelled, and that he had fraudulently converted the $1500 to his own use; and that he should pay the respondents $2012 24, with costs.

That William Fellows and Thomas Fellows, sons, and Roswell Day, son-in-law of John Fellows, the father, were well acquainted with, and had full knowledge of the agreement for the sale of the farm between the intestate and his father, and of the proportion which the intestate was to receive, and the time and manner in which, and the source from which, he was to receive it; that they knew of the bill filed, of the injunction, progress of the suit, and decree.

That John Fellows, the father, apprehending that a decree would be made against him, came to a fraudulent determination, and entered into a secret and fraudulent combination with William, Thomas, and Roswell, his sons, and son-in-law, so to manage and conceal his (John Fellows') property as to delay and defraud the respondents, and to retain for his own use, in the hands of William, Thomas, and Roswell, his sons and son-in-law, or for their use respectively, the money due the respondents, and all his (John Fellows') own property; and that for that purpose, after the injunction served upon him, and before the hearing, he voluntarily, fraudulently and without any fair, or valuable consideration, transferred and delivered to his son William, two of the notes drawn by Raymond and Jesse Adsit; and to his son Thomas, two others, one of which he had given up to the drawers, and received another of the same tenor and date drawn by them payable to himself; which notes William and Thomas continued to hold at the time of filing the bill against them, or they had received and held the amount fraudulently.

That after the exhibition of the bill against him by the intestate, John Fellows, the father, also in pursuance of the same fraudulent combination, voluntarily, fraudulently,

and without any fair and valuable consideration, or under color of some pretended debt, conveyed to Day, one of his farms of about 40 acres, lying in Malta, Saratoga county, worth about $1500, which was held by Day for the use of the father; that this was done to prevent its being taken and sold on execution upon the decree; that with the same intent, and for the same purpose, he conveyed his other farm of four acres, in Malta, worth about $500, to his son Thomas, without any consideration.

That on the 27th July, 1822, the respondents sued out a *fieri facias* upon their decree, directed to the sheriff of the county of Saratoga, upon which he levied only $20 out of the father's personal property; and that the land conveyed to Day had been sold upon the *fi. fa.* to the respondents, for $300, and that conveyed to Thomas Fellows for 50 dollars, upon which the sheriff returned to the *fi. fa.* that he had levied $353; and *nulla bona et terræ*, as to the residue. That Thomas Fellows had paid the respondents the fifty dollars which they bid for his lot, in order to redeem it.

That the respondents had applied to the defendants below in a friendly manner, &c. but that they, combining and confederating, &c. all which, &c.

The bill concluded by praying that the conveyances to Thomas Fellows and Roswell Day might be declared void and delivered up to be cancelled; that an account might be taken of the money paid and received on the notes, and this decree to be paid to the respondents, to the amount of the decree in their favor, with interest thereon; and for general relief.

To this bill, the defendants demurred severally; and the appellant assigned for causes of demurrer that the bill was exhibited against the appellant, John Fellows, Thomas Fellows and Roswell Day, for several distinct matters and causes, in many whereof, as appeared by the bill, the appellant was not, in any manner, interested or concerned; by reason of which distinct matters, the bill was drawn out to a considerable length, and the appellant compelled to take a copy of the whole; that by joining the appellant with the other defendants below, and distinct matters together, which did not

depend on each other in the bill, the pleadings, orders and proceedings would, in the progress of the suit, be intricate and prolix, and the appellant put to unreasonable and unnecessary charges in taking copies, although several parts of the bill no ways related to or concerned him, &c.

The appellant also answered, and denied that he ever did, at any time, combine with the other defendants below, all or either of them, so to manage and conceal all; or any part of the property of John Fellows, as to delay and defraud the respondents, and to retain in the hands of Thomas Fellows, Roswell Day and the appellant, all or either of them, for the use of John Fellows, or for the use of Thomas Fellows, Roswell Day, and the appellant, all or either of them, all or any part of the money belonging to the respondents, arising from the sale of the farm mentioned in the bill, or all or any part of the property of John Fellows, as stated in the bill.

And he also denied all, and all manner of unlawful combination, &c. (in the usual form.)

The demurrers were brought to a hearing in August term, 1823, when his honor, the Chancellor, overruled them, and ordered the defendants below, to put in a good and sufficient answer in six weeks.

From this decree, William Fellows appealed ; and now the Chancellor assigned the reason for the decree as follows :

SANFORD, Chancellor. The object of this suit, is to obtain satisfaction of a decree against John Fellows, from his property. The bill alleges, that all his property has been transferred by him without consideration and fraudulently, in parcels, to three persons, that is to say, one part to his son William, another part to his son Thomas, and another part to his son-in-law Roswell Day. John Fellows and these three persons are made defendants ; and they all demur to the bill, alleging, that they are impleaded together, for distinct matters.

A complainant is not permitted to demand by one bill, several matters of distinct natures, against several defendants. Mitford, 146, 147. 1 Harr. 289.

The matter demanded by the bill, is the property of John Fellows ; but this property, having been divided into three

parts, is now held in portions, by the other defendants. Each of these defendants, by his demurrer, confesses, that his share of the property, was conveyed to him without consideration, by fraud, and for the purpose of screening it from the complainants' demand. When these defendants thus admit, that this property is now in their hands, with out any right whatever, against the complainants, they may justly be considered, as also admitting that the same property is now one subject of demand, as it clearly was before the transfers were made.

If, however, instead of one matter in demand, here are three, they are all of the same nature, in respect to the ques-tions which they now present. Each one of three defendants holds a portion of the property of John Fellows, by fraud, and by a fraud of the same kind. The right of the complainants is against the whole property; and their right against all portions of it, is of one nature. The claims of the three defendants who now hold the property in portions, are of one character, each of them holding under a fraudulent transfer, made by John Fellows, in like manner in each instance.

This, therefore, is not a case of several matters of distinct natures, in the sense of the rule, upon that subject.

Each of these defendants, has subjoined to his demurrer, an answer, denying combination with the other defendants. Such an answer is a sufficient denial of the general charge of combination, made in the bill; but all the fraud specially alleged in the bill, stands confessed. The defendants deny, that they combined to defraud the complainants; but they admit, that they did defraud the complainants, by the transfers of the property and by holding it in separate portions.

The bill expressly alleges, that John Fellows had determined to transfer all his property, in order to defraud the complainants. From the allegations of the bill, from the relation of these defendants to each other, and from the course and nature of these transactions, it sufficiently appears, and may be taken as a fact, that each of these defendants had knowledge of the conveyances to the other defendants, and of the fraudulent object of all the conveyances.

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

In this respect, all the defendants were privy to a scheme of fraud, of which the consummation consisted in separate conveyances of separate parts of the property. If the manner of accomplishing this fraud cannot deprive the complainants of their rights, it should not deprive them of their remedy; and these defendants can not justly claim the benefit of the rule concerning distinct matters of different kinds, when their own fraud has produced the separation in question. The conveyances by the father to three others of his family, are the very fraud which forms the basis of the suit, and such a fraud can not prevail against either the right or the remedy of the complainants. The separation of the property into portions, is a part of the fraud; and to allow that such a separation shall render separate suits necessary, would be, to allow success to the fraud itself, so far as multiplicity of suits may impede the recovery of a just demand. When the matters in question are thus rendered several by fraud, the fraudulent parties have no claim to the benefit of the rule which forbids that distinct subjects shall be blended in one suit. The circumstances of this case, form a sufficient connection between the defendants, in respect to the property in demand, to enable the complainants to join them in one suit.

*S. G. Huntington*, for the appellant. 1. The respondents' claims are founded on several matters of distinct natures, which they have introduced into their bill against several defendants. No matter in what form the bill may bring forward these matters, if the claims are in their nature distinct, and should have been the subject of a separate suit against each defendant, the respondents cannot make them joint by treating them so in their bill. The appellant denies all fraud by his answer, all combination or connection with the other defendants, in the fraud charged, and all joint design to withhold the claim of the respondents. This leaves him alone, and standing upon his individual rights. If any design against the respondents' rights was formed, it began and ended in the mind of John Fellows, the father, and never was communicated to the appellant. The denial is, that the defendants ever combined with John Fellows, or that he combined with

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

them. This does away all joint equity against the defend ants.

Indeed, William Fellows, Roswell Day and John Fellows are not charged with jointly combining. For aught that appears in the bill, John Fellows conveyed to William Fellows at one time, and to Roswell Day at another; neither William nor Roswell knowing what the other was about. To warrant joining them as defendants, in relation to the land, the bill should certainly show that they were jointly privy to the fraud. They are not, as to this, charged with following up any fraudulent design. All combination and joint design among the defendants, are confined on the face of the bill, to the transfer of the notes to William and Thomas Fellows, and Roswell Day. Taking the averments in the bill and answer together, it is impossible for the Court to deduce any connection between the defendants. No joint decree is prayed for; and it must from the nature of the case, be against the defendants severally, according to the property in their respective possessions.

If things of a distinct nature, are joined in a bill against different defendants, it is good cause of demurrer. (2 Madd. Ch. 234, 1st ed. 1 Harr. Pr. 392, 8th ed. Mitf. Pl. 147, 3d ed. Eq. Drafts. 422, 3.) No doubt has ever been entertained that a demurrer will lie for this cause, if accompanied with an answer denying all combination. (Coop. Eq. Pl. 182-3. Mitf. Pl. 147, 3d. ed.) The proposition for which we contend is illustrated in the two books last cited; and the question was fully considered in *Whaley* v. *Dawson*, (2 Sch. & Lef. 367, 370;) *Dilly* v. *Doig*, (2 Ves. Jun. 486,) and *Brinkerhoff* v. *Brown*, (6 John. Ch. Rep. 139, 149.)

2. The respondents have also joined pretended claims, in their own right, with other pretended claims in the right of the intestate. It is not averred that the respondents bid for the land in a representative character. As to this, they must, therefore come in their own right. Where an administrator bids upon an execution of his intestate, it must, from the nature of the transaction, be in his own right. (Toll. L. E. 239, 2d Lond. ed.) He cannot throw the purchase upon his *cestuis que trust.* Nothing is said that the heirs or dis-

nibutees of the intestate, even knew of the purchase. To warrant blending this with matters *en autre droit*, their assent should be shown affirmatively. They were not bound to submit, and have the land thrown upon them for better or for worse. (Sugd. L. V. 35, Am. ed. 1820. *Beardsley* v. *Root*, 11 John. Rep. 464. 1 Madd. Ch. 269, 1st ed. 2 id. 384. *Ex parte Bennet*, 10 Ves. Jun. 381, 400. *Earl of Winchelsea* v. *Norcliffe*, 1 Vern. 435, 437. *Nelthorpe* v. *Pennyman*, 14 Ves. 517. *Prowse* v. *Abingdon*, 1 Atk. 484. Toll. L. E. 182. Bac. Abr. *Guardian*, (G.)

3. The complainants have not made a case which entitles them to discovery or relief. A discovery could be of no avail for the purposes of the bill. The notes in question were all *res judicatæ*, before the commencement of this suit. The intestate filed his bill, which was followed up by his personal representatives; and a decree obtained, not for the notes themselves, but their value. This decree declares that the notes were appropriated to the use of the defendant, in that suit, and directs him to account for the value. A *fieri facias* was issued upon the decree. This operated to transfer the property in the notes like an action of trover. If the Chancellor could not originally reach these notes in the hands of John Fellows, can they now be pursued beyond him, in the hands of the defendants? An injunction was obtained against the transfer of the notes, and the intestate, having neglected to take a decree for them specifically in the first instance, cannot now follow them. Having the cause before them, the Court will look into, and decide the whole merits of the case. (*Le Guen* v. *Gouverneur & Kemble*, 1 John. Cas. 436. *Bush* v. *Livingston*, 2 Caines' Cas. Err. 66. *Bebee* v. *Bank of N. York*, 1 John. Rep. 529.) And they will hear an objection in this Court, which was not taken below, if they see that, upon its being taken there, it could not have been obviated. (*Beekman* v. *Frost*, 18 John. Rep. 544.)

*J. L. Velie*, for the respondents. The appellant contents himself with the simple denial of combination; and, by his demurrer, admits all the rest of the case; all the specific

allegations of fraud ; that the intestate was drawn into a Court of Chancery, to enforce the trust against his father, and that after the decree, and with a view to defeat the claim of his heirs, they fraudulently received a transfer of the very subject of that suit, and all the real property of the defendant, with knowledge and without consideration. They then gravely come into a Court of Equity, and ask if there be relief. If there be none, if there be any technical bar, it is a very great slander upon our system of jurisprudence.

We admit the rule, that where the matter in litigation depends upon distinct rights, in different individuals, they cannot be joined; but it has no application to this case. We present a transaction to the Court founded upon, and progressing in fraud ; and whether one defendant may have obtained 500, and another 1000 dollars of the subject to which we are entitled, can make no difference : it does not alter the nature of our claim or their defence. We ask that the property of John Fellows may pay his debts. The defendants admit themselves to be *quasi* agents of John Fellows. As between them and a creditor, they have no claim as owners.

The rule relied upon against the joinder will be found in the authorities cited on the other side. We rely on *Whaley* v. *Dawson*, (2 Sch. & Lef. 367,) and *Brinkerhoff* v. *Brown*, (6 John. Ch. Rep. 139,) and the authorities cited in the latter, as decisive for the respondents. The result of that case is, that a bill may be filed against several persons, relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the plaintiffs, and in which all the defendants were, more or less, concerned, though not jointly, in each act.

The want of alleging that the respondents purchased upon the execution *as administrators*, does not vary the case. Indeed, they could purchase in no other character. When administrators purchase under the circumstances disclosed, equity will always compel them to account. Suppose they buy at half the value of the property, and the judgment remains unsatisfied, are they to profit by the speculation ?

But without regard to the other circumstances, we have a claim upon the decree and execution in the first suit. This was a lien on all John Fellows' property. It was so as to all which he retained in his hands; and all which he transferred without consideration. The transfers were merely void; and in the eye of the law, the whole continued in him, as to the respondents. The demurrer, which admits the fraudulent transfer, virtually admits all these legal consequences. o

These few simple principles, it appears to us, decide this cause. If the argument for the appellant is to prevail, the situation of creditors will be very difficult. By dividing the subject of dispute into ten parts or more, the debtor may drive the creditor to as many suits; and the whole object must be three times expended in the pursuit.

*A. Van Vechten,* (same side.) This being a speaking demurrer, should be overruled for that, if for no other reason. (*Edsell* v. *Buchanan,* 2 Ves. Jun. 83.)

Every rule laid down by his Honor the Chancellor, is agreeable to equity and the principles of law. The defendants admit a series of facts establishing a fraudulent result, in which they were agents. By taking property under the circumstances disclosed, they have united themselves in the fraud, and they cannot escape by the general denial of combination, when they admit specific facts which clearly show it. It was necessary to join them. The same proof applies to all. Indeed, it is enough that the transfer was without consideration, and void as against creditors. The whole property is John Fellows' right, in the hands of the other defendants. The rule relied upon does not demand identity of person; the identity of subject matter is enough.

The objection assigned by the demurrer, that prolixity and intricacy and expense are promoted by a single suit, is not true in fact. Only three names are added by this, and three several bills would be much more voluminous and require more copies.

The respondents are correctly styled administrators.

They obtained the decree as such, sued out execution and bid off the property as such, and they could not divest themselves of that character. (1 Mad. Ch. 91, 1st ed. *Campbell* v. *Walker*, and *Whelpdale* v. *Cookson*, 5 Ves. 682. *Lister* v. *Lister*, 6 id. 631. *Ex parte Bennett*, 10 id. 381, 392. *Sanderson* v. *Walker*, 13 id. 601. *Holdridge* v. *Gillespie*, 2 John. Ch. Rep. 30. *Hart* v. *Ten Eyck*, id. 104. *Davoue* v. *Fanning*, id. 252. *Hendricks* v. *Robinson*, id. 311. *Howell* v. *Howell*, 4 id. 118. *Van Horne* v. *Fonda*, 5 id. 388.)

The objection that the notes were *res judicatæ*, under the decree, can avail nothing. Suppose a bill filed for a specific chattel, which, before the decree, is sold and converted into money by the defendant, and the decree is for the money; does it follow that you cannot follow the subject into which it is changed, or the chattel itself into the hands of the person who bought it? The Chancellor would find means to make any party, who has disposed of it, account for its value.

*S. A. Foot*, in reply. It is true, that, by demurring, we admit the fraud; but we deny combination; and the whole is thus reduced to a mere point of law. It is unbecoming in gentlemen to introduce an informal proceeding, and then charge the fault upon the law. We are litigating a rule of pleading; and one reason why the law objects to the unnecessary joinder of parties defendants, is, that in this way a plaintiff may deprive one of the testimony of the other. Unless there be a joint liability, or joint right in parties, they are witnesses for each other; and the reason of the rule in equity is, so far, the same as that which prevails in trespass at law. There a defendant, clearly innocent, or disconnected with the others, is preliminarily acquitted by the jury. Here we must resort to a demurrer; for answering and suffering publication to pass would work a complete deprivation of the testimony, which we might want at the hands of our co-defendants.

What then is the test by which to determine whether there should be a joinder? If, to warrant this, there should be a joint liability in whole or in part, we must prevail. If re-

mote connection, without joint liability, be enough, perhaps we must give up the cause. It seems to us, that in the cases decided by the Court of Chancery, this idea of joint liability has been left too much out of view. In *Brinkerhoff* v. *Brown*, ( 6 John. Ch. Rep. 139,) the fraudulent combination was not denied ; and we are satisfied that the Chancellor could not have made some remarks which he has done in that case, had he fully examined Lord Kenyon's remarks in *Berkley* v. *Presgrave*, (1 East, 220, 226, 227,) whom he admits to be a great master of equity practice. He says the rule is the same both at law and in equity : and we assert, without fear of contradiction, that no case can be found sustaining a joint bill upon distinct and separate rights or liabilities, where each person claims or is liable for his own acts alone. There must be a common point of controversy, the decision of which affects the whole, and will settle the rights of all. It is not enough that there is a common source of title. One has a patent and contracts to sell ten different farms to ten different men ; he cannot file a bill against all, jointly, to compel a specific performance. Yet here is a common source of title. A merchant sells goods to one in Plattsburgh, and to another in New York ; he cannot sue them jointly for the price. All gentlemen can allege, in this case, is a common source of title. One of the defendants purchases at one time a distinct subject, and another at a subsequent time, from the same man. There being but one decree, and a sale of the whole subject matter to the respondents, does not connect the liability of the defendants. Here not only the persons, but the subject matter is entirely distinct. One is proceeded against for land, and the other for notes. Does a joint suit follow, as contended, because individuals, living perhaps in different parts of the country, happen to do different acts which may produce a fraudulent result ? Where a man fraudulently sells one of his farms to A. at Buffalo, and another to B. in the city of New York, can C. a creditor, join them in a suit ? To warrant this, it is necessary to show that A. is accountable for the act of B. of whom he never heard.

In what character does the law intend that these respon-

NEW YORK, dents purchased under the execution? Clearly in then
June and own right, not as administrators. This is evident from
July, 1825. the very cases cited on the other side; and the bill is mul-
tifarious in this respect.

Fellows
v.
Fellows.       His Honor, the Chancellor, assumes that each of the de-
fendants had knowledge of the conveyance to the other. He
infers this from the course of the transactions. With defer-
ence, we conceive that no such inference is warranted by
the case stated in the bill. No such knowledge is charged
in any part of it. Indeed, we conceive, that a suit might
as well be brought against two persons jointly, one of whom
had bought fraudulently and the other fairly. The sepa-
ration of interests could not be more distinct in the case sup-
posed, than the one under consideration.

What is ad-    WOODWORTH, J. It is material to ascertain what facts
mitted by the in the bill are admitted by the demurrer. Whatever is not
demurrer       covered by the answer, is necessarily admitted. The de-
nial is, that the appellant did not combine with the other
defendants, to defraud or delay the respondents. Exclud-
ing this charge, as not admitted, the following facts alleg-
ed in the bill are conceded : that all the defendants in the
Court below were acquainted with, and had full knowledge
of the agreement made for the sale of the farm between
Ezra Fellows and John Fellows, and the proportion of the
purchase money that Ezra Fellows was to receive ; that
they had knowledge of the filing of the bill against John
Fellows, and the service of the injunction restraining him
from selling or disposing of the notes in question. The
bill also charges, that John Fellows, under the apprehen-
sion that a recovery would be had against him, came to a
fraudulent determination, and entered into a fraudulent
and secret combination with the defendants, so to manage
and conceal the property, as to delay and defraud the res-
pondents ; and that, in fulfilment of this fraudulent design,
without any valuable consideration, he transferred two of
the notes to his son William, and two others to his son Tho-
mas ; and also conveyed 40 acres of land in Malta to his
son-in-law Roswell Day, and four acres to his son Thomas

        Now, on looking at the answer, it will be seen that the

denial extends to this merely, that the appellant did not combine with the other defendants below to defraud; that is, according to the legal and grammatical meaning of the term, they did not join together or agree to act in concert, for the purpose of consummating this fraud. Admitting that there was no formal agreement that they should all unite in the act, yet it stands confessed that all had intimate knowledge of the whole transaction. They knew the justice of the respondents' claim against John Fellows, and, knowing this, William Fellows, Thomas Fellows, and Roswell Day consented to become actors, and severally took transfers of separate parcels of John Fellows' property, which transfers are admitted to have been made fraudulently, and without consideration.

Granting that there was no express agreement between the parties to defraud, the demerit, in a moral point of view, was not the less that they acted individually, and not in concert. Whether, in a legal point of view, the objection that several distinct matters are alleged, in which the appellant is not interested, can prevail, I will briefly examine.

The general rule will not be questioned, that where a bill is filed concerning things of distinct natures, against several persons, it is demurrable; but unconnected parties may join in a suit, when there is one connected interest among them all, centering in the point in issue in the cause. (2 Madd. 234. 2 Anstr. 469, 477.)

In the present case, the object is to reach the property of John Fellows, in the hands of the appellant and the other defendants. This property was fraudulently parcelled out, and conveyed to three individuals. But for the fraudulent acts of the appellant, and the other defendants, the respondents might have obtained the fruits of their decree against John Fellows. The claim against all is of the same nature. The fraud alleged against each one of the defendants is the same. The question to be decided is, in every respect the same. The transfer being fraudulent, the property was not changed by being put into the hands of the defendants. The respondents seek the property of John Fellows, which the defendants hold without title. They are, therefore, all necessarily concerned in the thing to be

NEW YORK
June and
July, 1825.

Fellows
v.
Fellows.

Whether the objection of several matters, &c. can avail.

The general rule is, that a bill filed for matters of distinct natures, against several defendants, is demurrable; otherwise, where there is one connected interest among them, centering in the point in issue.

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

The case comes within the class of cases relative to a connected interest, &c. and the defendants may be joined.

recovered, although they set up distinct interests to separate parcels.

I am clearly of opinion, that. this is not a case within the rule relied on by the appellant; but must be considered as falling within that class of cases where there is a common interest among all, centering in the point in issue in the cause. Lord Redesdale, in *Whaley v. Dawson,* (2 Sch. & Lefr. 370,) observes, that in the English cases, where demurrers, because the plaintiff demanded in his bill matters of distinct natures against several defendants not connected in interest, have been overruled, there has been a *general right* in the plaintiff covering the whole case, although the rights of the defendants may have been distinct. In such cases, the Court proceeds on the ground of preventing multiplicity of suits, where one general right is claimed by the plaintiff against all the defendants. A demurrer lies where the subjects of the suit are, in themselves, distinct. Here the subject is the property of John Fellows, in the hands of the defendants. The case does not afford ground for a demurrer within the authorities cited.

It is also objected that the respondents have connected in the bill, claims in their own right, and in their right as administrators.

Respondents have not connected matters in their own right, with matters en autre droit.

An administrator, who buys land on a judgment of his intestate, must account for it to his *cestuy que trust.* Power of chancery to reach debtors' property.

I do not so understand the bill. The whole of the proceedings were in their right as administrators. The purchase by the respondents at the sheriff's sale, was in the character of administrators. They were agents and trustees, and could not divest themselves of the trust. The *cestuis que trust* were entitled to take the land at their election ; and the respondents, having purchased in this manner, may, in their representative capacity, call in the aid of the Court to perfect their title. (5 John. Ch. Rep. 388. 1 Madd. Ch. 91. 5 Ves. 682.)

The power of the Court of Chancery to assist a judgment and execution creditor to discover and reach the property of his debtor, in whosesoever hands it has been placed, I have considered as well settled, since the case of *Hadden v. Spader et al.* (20 John. Rep. 554.) There can be no well founded objection on this ground. I consider this case much

stronger ; for here the appellant does not stand as a mere bailee, but as having no colorable ground of claim to the notes or the avails of them.

On every ground upon which this cause can be viewed, I am of opinion that the decree of his Honor the Chancellor be affirmed.

SUTHERLAND, J.  The object of the bill, is to enable the respondents to reach the property of John Fellows, (against whom they have a decree,) fraudulently transferred by him to the other defendants, and thus put beyond the reach of the execution of the respondents.  The object is a legitimate one ; and to the accomplishment of which, a Court of Equity will readily lend its aid.  The power and authority of the Court of Chancery, to grant the aid and relief asked for, is fully established by the case of *Hadden* v. *Spader*, (20 John. Rep. 554,) decided by this Court.  If the allegations of the bill be true, here is a most iniquitous attempt on the part of a debtor, to put his creditor at defiance, and defraud him of his just debt, by a voluntary and fraudulent distribution of his property among his children.  That the respondents are entitled to relief, is clear ; and the only question is, whether they must seek it by separate suits against each of the individuals implicated in the transaction, or whether they are at liberty to bring them all into Court in one suit.

*Object of the bill.*

*Power of chancery to grant the relief prayed for by the bill.*

*The point.*

It is a favorite object with a Court of Equity, to prevent multiplicity of suits.  For this purpose it is a general rule, in Chancery, that all persons materially interested must be made parties.  Creditors are permitted to unite in calling on the representatives of a deceased debtor, for an account of the assets of the estate ; or one or more of them may prosecute the suit, in behalf and for the benefit of the whole.  The forms of proceeding in Chancery, and the power of the Court to mould its decrees, so as to suit the various equities of the case, as established by the proof, enable it advantageously to settle, and adjust in a single suit, rights and interests which, according to the rules of pleading in the Courts of common law, would necessarily result in various issues, incapable of being tried in a single cause, and disposed of by a single judgment.

*Preventing multiplicity of suits, is a favorite object of equity.*

*Hence all interested are to be made parties.*

*Creditors may join, or one sue for the whole.*

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

But equity
will not per-
mit several
plaintiffs, by
one bill, to de-
mand several
distinct mat-
ters; nor one
plaintiff to de-
mand several
matters of dif-
ferent natures
against several
defendants.

Otherwise, if
they have a
common inter-
est, centering
in the point in
issue; or where
one general
right is claim-
ed by the bill.
Illustrations
of these pro-
positions

But notwithstanding this disposition of a Court of Equity to prevent the multiplication of suits, it will not permit several plaintiffs to demand, by one bill, several matters, perfectly distinct and unconnected, against one defendant; *nor one plaintiff to demand several matters of different natures against several defendants.* And the reason of this rule is said to be, that such a proceeding would tenu to load each defendant with an unnecessary burthen of cost, by swelling the pleadings with the statement of the several claims against the other defendants, with which he has no connection; (Coop. Eq. Pl. 182 ; Mitf. 146 ; 2 Madd. Ch. 294 ; 2 Harr. Ch. Pr. 289 ; 1 East, 227 ;) and also to prevent confusion, and to preserve some analogy to the comparative simplicity of declaration at common law. But where several persons, although unconnected with each other, are made defendants, a demurrer will not lie, *if they have a common interest centering in the point in issue in the cause.* (2 Anstr. 477. 2 Madd. Ch. 294.) Nor will it lie, where one general right is claimed by the bill, though the defendants have separate and distinct rights. Thus, in the *Mayor of York* v. *Pilkington,* (1 Atk. 282,) it was held that a bill to quiet the plaintiff in a right of fishery, might be brought against several defendants, although there was no privity between them and the plaintiff, and they claimed *distinct rights.* The plaintiff claimed a general right to the fishery extending *to all the defendants ;* and it was held that they might avail themselves of their several exemptions and distinct rights, upon an issue to try *the general right.* The bill was sustained for the sake of peace and to prevent a multiplicity of suits. A bill against several unconnected defendants, to establish the custom of a mill, and a right to tithes, has been sustained upon the same general principle ; and that it was for the establishment of a right liable to invasion by all the world. ( *Whaley* v. *Dawson,* 2 Sch. & Lef. 370.) But the proprietor of a copy-right cannot proceed in one bill against several booksellers, between whom there is no privity or connection, for a violation of his right. This was so held in *Dilly* v. *Doig,* (2 Ves. Jun. 486 ;) and the Lord Chancellor remarks, that he does not remember any *case upon patent rights,* where a number of persons acting all separately

upon distinct grounds, have been permitted to be brought
before the Court in one bill; and he takes the distinction
between a bill to establish a right of fishery, or the custom
of a mill, and the case then before him. So also, if an es-
tate is sold, in parcels, to different purchasers, the vendor
can not unite them all in one bill for a specific perform-
ance, nor can they unite in one suit against the vendor for
the same purpose; for each contract is separate and inde-
pendent, and each case must depend on its own peculiar
circumstances. (*Raynor* v. *Julian*, 2 Dick. 677. Coop.
Eq. Pl. 182.) In the case of *Ward* v. *The Duke of Nor-
thumberland and The Earl of Beverly*, (2 Anstr. 469,)
the bill was held bad, not only because a considerable part
of it related merely to the private concerns of the Duke,
with which Lord Beverly had no concern; but it was bad
as against the Duke alone, because, although he was inte-
rested in every part of it, it was in different characters; in-
dividually and solely as to some and in the character of
executor, and jointly with Lord Beverly as to others. But
Chief Baron M'Donald there recognizes the principle, "*that
unconnected parties may be joined in a suit, where there
is one common interest among them all, centering in the
point in issue in the cause.*"

It is not sufficient, as was held in *Saxton* v. *Davis*, (18 It is not suf-
Ves. 71,) that the parties have a common interest in some ficient that the parties have a
one or more items in an account charged. The contrary common inter-
position was taken in that case by the counsel for the one, or more
complainants; but it was conclusively answered by Sir items, in an ac-
Samuel Romilly, that if that were sufficient, the objection count charged.
to a bill, as multifarious, could never be sustained. *They
must have a common interest, not in a particular item,
or insulated charge in the bill, but in the point in issue
in the cause.* And this seems to be the general test laid
down in all the elementary writers, and acknowledged by
all the cases in England. The only difficulty is in its ap-
plication.

This question was fully considered and discussed by the The decision
late Chancellor in *Brinkerhoff* v. *Brown*, (6 John. Ch. Rep. in *Brinkerhoff* v. *Brown*, 6
139;) which was a case very analogous, in many respects, John. Ch. Rep.
to the one now before the Court. The complainants, in 139, applied to this cause

NEW YORK,
June and
July, 1825.
―――――
Fellows'
v. ,
Fellows.

that case, were several distinct and unconnected *judg-*
*ment creditors* of the Genesee Manufacturing Company ,
and the object of their bill was to 'obtain satisfaction of
their debt out of the property of the company, which they
alleged had been withdrawn from the reach of their exe-
cutions by the fraudulent acts of the defendants, some of
whom were the trustees of the company : and one object
of the bill was, to charge the trustees individually, for
neglect of duty and *fraud.* With that charge, it was said,
the defendants who were not trustees had no concern.
Another object was, to charge others of the defendants as
stockholders, and another, to redeem certain personal pro-
perty purchased *by two of the defendants,* with which
the other defendants were not shown to have any concern.
The bill charged that five of the defendants fraudulently
confessed a certain judgment, in which the other two were
not alleged to have had any interest : and the bill was de-
murred to as multifarious, on these among other grounds.
The Chancellor, after stating the facts in the case, remarks,
"it thus appears, from the -bill, that all the defendants
*were not jointly concerned in every injurious act charged.*
There was a series of acts on the part of the persons con-
cerned in this company, *all produced by the same fraud-*
*ulent intent, and terminating in the deception and in-*
*jury of the plaintiff.* The defendants performed differ-
ent parts in the same drama, but it was still one piece,
one entire performance, marked by different scenes ; and
the question now occurs, whether the several matters
charged are so distinct and unconnected, as to render the
joining of them in one bill a ground of demurrer." After
considering all the English cases, he observes, that "*the*
*principle to be deduced from them is, that a bill against*
*several persons must relate to matters of the same nature,*
*and having a connection with each other, and in which all*
*the defendants, are, more or less, concerned, though their*
*rights in respect to the general subject of the case may be*
*distinct.*" And, in relation to that particular case, he goes
on to remark that, " when we consider that the plaintiffs
are judgment creditors, having claims against the Genesee
Company perfectly established, and not the subject of
litigation in this suit ; and that the general right claimed

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows

by the bill is a due application of the capital of that company to the payment of their judgments; that the subject of the bill, and of the relief, *and the only matter in litigation, is the fraud charged in the creation, management and disposition of that capital,* and in which charge all the defendants are implicated, though in different degrees and proportions, I think we may safely conclude, that this case falls within the reach of that principle, and that the demurrer cannot be sustained." He accordingly overruled it. These observations are as just and pertinent in their application to this case, as to that in which they were used. Here the respondents are judgment creditors of John Fellows, having their claims perfectly established by a decree in chancery, and not the subject of litigation in this suit. Here also the general right claimed by the bill is a due application of the property of John Fellows to the payment of their judgment. Here also the subject of the bill and of the relief, *and the only matter in litigation, is the fraud charged in the management and disposition of that property ;* and in which charge all the defendants are implicated, though in different degrees and proportions. *Here the defendants, therefore have one common interest among them all, centering in the point in issue in the cause,* and distinct matters, of different natures, are not demanded by the bill. It is one matter, the property of John Fellows; and the point in issue, upon which the rights of all the parties must depend, is, whether the transfer of that property to his sons and son-in-law, who are his co-defendants, was fraudulent or not. Why may not that question be tried as well in one as in three suits? The transfer to each is alleged to have been made with the same fraudulent intent, at the same time; to have been received by each without consideration, with a full knowledge of the fraudulent motive with which it was made, and an entire acquiescence and participation in it. It was in truth but one transaction, in which the defendants all participated. The evidence in relation to each must be substantially the same. Neither the pleadings nor the proofs are essentially varied or enlarged, from wnat they would necessarily have been, had the bill been filed against one of the defendants only. If all the parties

NEW YORK, to a fraudulent transaction, like this, cannot be called to
June and an account in one suit, it is in the power of dishonest debt-
July, 1825. ors, by a distribution of their property, in minute portions,
Fellows among their relations and friends, to defraud their credi-
v. tors and set them at defiance with impunity. The ex-
Fellows. pense and the delay of separate suits, would render their
prosecution worse than useless, for all purposes of indem-
nity or relief. The establishment of such a doctrine would
be most mischievous ; and I am persuaded that it has as
little foundation in authority, as it certainly has in the
large and comprehensive principles of substantial justice
and equity.

Respondents      The other point, made on the part of the appellant, that
have not join-  the respondents have joined and connected claims in their
ed   claims  in
their own right own right, and claims in their right as the representatives of
and  *en autre*
*droit*         Ezra Fellows, is unfounded in fact. It grows out of that part
of the bill in which the respondents state the proceeding
upon the execution, and the sale of the real and personal es-
tate ; and that they became the purchasers, at such sale,
of the lot which had been conveyed to Roswell Day and
Thomas Fellows. The first objection is, that they do not
state in the bill, that they purchased as administrators.
That allegation is in the same form with every charge in the
bill. It commences by stating the respondents to be the rep-
resentatives of Ezra Fellows, and in all the subsequent parts,
they designate themselves simply as *your oratrix and ora-
tor*, without adding their description of administrators. But
that is to be understood throughout, and was unnecessary to
An adminis-  be stated. If then, they purchased as administrators, it is not
trator purcha-
sing land on a for the defendants to question their authority. It is to be
decree in favor presumed in this stage of the cause, that they purchased at
of his intestate,
must   account the request and for the benefit of the heirs ; and a Court of
for it to his Equity would compel them to account to the estate.
*cestuy    que
trust.*          I am, therefore, of opinion that the decree of his Honor
the Chancellor should be affirmed.

The rule in    SAVAGE, Ch. J. In *Brinkerhoff* v. *Brown*, (6 John Ch.
*Brinkerhoff* v.
*Brown*, is the Rep. 157,) the late Chancellor, after a full examination of
correct   one,
and this case the cases cited on the argument of this cause, deduces from
comes  within them this principle : " That a bill against several persons
it.

must relate to matters of the same nature, and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case, may be distinct." The cases cited, in my judgment, warrant this rule. In *Dilly* v. *Doig*, (2 Ves. Jun. 486,) it was held that two booksellers, who had been guilty of an invasion of the plaintiff's copy-right, could not be joined as defendants in the same bill, on the ground that there was no privity. The Lord Chancellor says, however, "If the defendant against whom you had got the injunction, had transferred his books to another, I would have followed it." Now it is fair to infer, that if the bookseller enjoined, had sold his books to several persons who were privy to the injunction, and all of whom took the books with the express purpose of defrauding the plaintiff, though each might have no interest in the books sold to the other, yet they would have been so far connected as to be properly joined in one suit.

In the case put by Ld. Kenyon, of an estate sold in parcels to several individuals, who could not be permitted to unite in a bill for a specific performance, there is a distinct contract with each individual which may admit of very different considerations. Not so in the case now before the Court. There was, in the hands of John Fellows, certain property in the custody of the law, sequestered if I may use the expression, and set apart to answer the demand of Ezra Fellows. This fact was perfectly known to all the defendants; and each of them, *separately*, as we are to intend, (for they have denied the combination and confederacy,) conspired with John Fellows, to defraud the respondents, by collusively taking separate parts of the property, and holding it for the benefit of John Fellows. There was no privity between William Fellows, Thomas Fellows, and Roswell Day, but there was privity between each of them and John Fellows. If, then, we take the rule as laid down by the counsel for the appellant, "that there must be a common point of litigation, the decision of which affects the whole, and will settle the rights of all," still this case comes within it. The common point of litigation is the

Here is a common point of litigation, the decision of which affects the whole subject, and will settle the rights of all.

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

fraudulent transfer of the property by John Fellows to the other defendants. If the source of their title be corrupt, the property is taken with the taint of corruption, and though the person receiving it may have been innocent of all fraud, yet he must suffer a loss in consequence of the impure channel through which it came. This point was so decided, at the last term of this Court, in *Whelan v. Whelan*, (3 Cowen's Rep. 537.) And if so, with respect to an innocent person, *a fortiori*, a partaker in the corruption shall not retain what he has thus received. In my opinion, therefore, the appellant here comes within the rule relied on by the respondents. The matters are not distinct. They are component parts of one corrupted body.

On this point, (and this I consider the only point in the case,) I am of opinion that the decree of his Honor the Chancellor, be affirmed.

*An administrator buying land under a decree in favor of his intestate, must account for it to his cestuy que trust.*

There is no ground for the allegation, that the respondents come in two capacities. They acted throughout as the representatives of Ezra Fellows ; as trustees for those interested in the estate ; and to whom they are accountable for the land, purchased with the estate in the respondent's hands.

*The point.*

COLDEN, Senator. It is not denied that, under the case made by the bill, the respondents may be entitled to relief; but it is contended that the Court of Chancery could make no decree in their favor in this case, because the appellant was impleaded in the Court below with other defendants.

*Matters distinct, and of different natures, cannot be joined in the same bill.*

It is admitted to be a rule of Equity pleading, that matters which are distinct, and of different natures, cannot be joined in the same bill.

*Difficulty of applying the rule has given rise to several cases.*

It often happens that it is not easy to ascertain whether the matters, which are the subject of a suit, are or are not distinct and of different natures ; and, therefore, it is frequently difficult to determine when the rule I have mentioned is to be applied. It is this difficulty which has given rise to the numerous cases that have been cited in the argument.

I shall not attempt to reconcile these authorities ; or to do more than to ascertain whether the general rule be applicable to the case now under consideration, so as to preclude the respondents from maintaining their suit.

The counsel for the appellant could not avoid admitting, that if there were a joint liability on the part of the defendants below, the demurrer could not be sustained. And they also, very properly, as it appears to me, admitted that if the defendants below were parties to the fraud, which is the *gravamen* of the bill, and acted in concert to accomplish it, there was such a connection between them as would render them jointly responsible. Then the question which we are to decide is, in my opinion, reduced to this: whether the facts stated in the bill, warranted the Chancellor in concluding that all the defendants below were parties and confederates in the fraud, which it is alleged was practised by the father, in transferring his real and personal property to his son-in-law and to the brothers of Ezra.

It is expressly stated in the bill, that each of the defendants below were acquainted with all the transactions of the father, in relation to the property in question, from the time of the sale to Adsit, till it came into their hands. They had full knowledge of the proceedings in the revived suit against the father, and of the injunction which was granted in that suit. They advised and aided the father in the management and defence of that suit. They took from the father, without giving him any consideration, a voluntary conveyance, in different parts, of all his property, each of them knowing that such transfer was made with a view to defraud, and that it would defraud Ezra. To William, the appellant, the father transferred two of the Adsit notes; to Thomas two other of the same notes, which notes, or their proceeds, it is averred, these sons fraudulently retain. To the son-in-law, the father conveyed a farm in Malta, as the bill charges, fraudulently, voluntarily, and without consideration, and with a view to avoid the effects of a decree against him in the pending suit; and in the same way, and with the same views he conveyed another piece of land in Malta, to his son Thomas.

It is expressly charged in the bill, not only that this property was transferred to, but that it is held by the grantees, with a view to defeat the claim of their brother Ezra.

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

Whether the chancellor was warranted by the bill, in saying that all the defendants were confederates in the fraud.

What is stated in the bill.

Now if we take the allegations of the bill to be true, it seems to me that we cannot hesitate to say that the defendants below were jointly concerned in practising the fraud, which was intended to defeat, and which has hitherto defeated, the just claim of the respondents.

Taking this to be true, the defendants were jointly concerned.

I say the just claim, because, although we have heard from the counsel that the farm at Stillwater originally belonged to the father, and that his object was to make a distribution of it among his children, yet no such facts appear on the record. We know of no owner of the farm prior to Ezra.

We may apply to this case, in my opinion, with great propriety, the words of the Chancellor in *Brinkerhoff* v. *Brown,* (6 John. Ch. Rep. 139 :) " there was a series of acts on the part of the persons concerned, all produced by the same fraudulent intent, and terminating in the deception and injury of the respondents. The appellants played different parts in the same drama, but it was still one piece, one entire performance, marked by different scenes." Other expressions of the Chancellor, in the same case, are not less adapted to the present occasion. " The subject of the bill," says he, " is the fraud charged ; in which charge all the defendants are implicated, though in different degrees and proportions." The connection between the defendants in that case, and their co-operation in the transactions which were the foundation of the suit, were certainly less obvious than is the participation of the defendants below in the acts against which relief is sought in the present instance.

It is hardly necessary to stop, to point out the great difference between the case presented by the bill, and the cases cited by the counsel for the appellant; in which it is decided that independent, unconnected holders of different parts of property which a complainant may claim, either on the ground of its having been fraudulently transferred to them, or on any other ground, can not be made the subject of a single suit.

Effect of the answer.

But it is said that though the demurrer would, if it stood alone, admit the allegations of the bill, and would therefore acknowledge the fraud, and the co-operation of the defendants below in its perpetration ; yet that there is in this case an

answer; and that the answer denies the fraud, and the charges in the bill from which it is deduced. If this were so, I think there would be no hesitation in deciding that the suit against the defendants jointly could not be maintained. But so far from this being the case, the answer does no more than deny the general and formal charge of combination. It appears to be drawn with great care not to deny any one of the facts which are stated in the bill as evidence of the fraud, and from which the conclusion that the appellant, William, acted in concert with his father and brother-in-law, with a design to defraud Ezra, results. Had the appellant said in his answer, that he knew nothing of the agreement between Ezra and his father, that he was not privy to the relinquishment of the bond and mortgage to Adsit, and the substitution of the Adsit notes, and the new mortgage; that he was ignorant of the proceedings in the original, and in the revived suit; that he and the defendants below were not their father's agents, or advisers in the management of that suit; that the transfer of the notes and the conveyances of the lands were made for a good or valuable consideration, and without any design to defeat the claim of the respondents, then the interest of the defendants would have been distinct and separate; there would have been no joint liability; and *though a demurrer might not have been proper,* if the answer had met these charges, as it would then have covered the whole bill, yet such an answer, if it would not have defeated the claim of the respondents, would at least have been fatal to this joint suit.

But the answer we have now before us is, as I have said, no more than a denial of the combination; and, indeed, amounts only to the general denial of fraud and confederacy, which is the conclusion of all answers, and which is always insufficient where, as in this case, fraudulent acts are particularly charged.

There is another ground on which, in my opinion, this demurrer must fail. It is charged in the bill that the notes were transferred, and the conveyances made to secure them as the effects of John Fellows, and with respect to the lands,

The defendants who took the property, were mere trustees of John Fellows, and, as such, jointly liable.

NEW YORK,
June and
July, 1825.

Fellows
v.
Fellows.

it is averred that they are held for h's use and benefit. These charges are not denied by the answer, and are, there, fore, admitted by the demurrer. The defendants below then, took and yet hold the property or the proceeds, as trustees for the grantor. I apprehend a Court of Equity would never allow trustees, under these circumstances, to set up their title or trust, against the claim of a creditor of the *cestuy que trust*.

Again, if the property be the property of John Fellows, in the hands of the defendants below as his trustees, though they hold different parcels of it, the suit is not for separate and distinct matters, any more than it would be if it were against John Fellows himself solely, and claimed from him money, notes and lands.

The respondents have not joined claims in their own right, and *en autre droit.*

It has been objected that the defendants below are not proper parties, inasmuch as they claim in their representative characters, and the transactions show that if they have any title, it is in their own right. But it appears to me that the complainants had no connection with these affairs but as administrators. This and another point made here, viz. that the notes were *res judicata,* do not appear, from the Chancellor's opinion, to have been raised when the cause was before him. They do not seem now to have been much relied upon by the counsel for the appellant, and I am not prepared to say that the demurrer can be sustained on either of these grounds.

The rule that multifarious matters shall not be joined in the same suit, seems to me to be all that requires consideration for the decision of this case.

The rule that multifarious matters shall not be joined in the same suit, is a rule of convenience.

This is a rule of convenience ; and however necessary its general observance may be, yet, though in this case it were to be admitted that the matters are distinct, and of different natures, (which in my opinion they are not,) still it is obvious that justice may be administered between the parties in this suit, without subjecting the appellant or his co-defendants to any of the embarrassments, the fear of which is the foundation of the rule. Nevertheless, if it appeared clearly to be applicable to the case, we could not refuse the appellant the advantage of it. But when it is so apparent that justice may be done, although there should be error in

not allowing the demurrer, there is less reluctance in deciding that it must be overruled.

My opinion is, that the decree of his Honor the Chancellor, should be affirmed.

This being the unanimous opinion of the Court, it was thereupon, ORDERED, ADJUDGED and DECREED, that the decree of his Honor, the Chancellor, in this cause, be affirmed, with costs to the respondents, to be taxed upon the appeal to this Court; and that the record and proceedings, &c. be remitted, &c.