JOHN HUGHES v. A. M. TENNISON and others.

April Term, 1878.

MULTIFARIOUSNESS AND MISJOINDER OF PARTIES. — An attachment bill by a creditor to subject to the satisfaction of his debt property conveyed by the debtor in distinct portions, at different times and independently, to several persons, and to set aside the conveyances as fraudulent, is not liable to the objection of multifariousness or the misjoinder of parties.

ATTACHMENT — EXCESSIVE LEVY — PROPERTY CLAIMED BY SEVERAL PERSONS. — The court is authorized, upon the answer or petition of defendants, to reduce an excessive levy of an attachment by a release of property in excess of the complainant's demand and costs, the complainant being allowed to elect on which property he would retain the levy, and, in the absence of such election, by proportioning the burden of the debt upon the defendants, where there are several claiming in different rights, and each defendant may replevy the property claimed by him, or become the receiver upon proper bond.

*Andrew McClain*, for complainant.
*East & Malone*, for defendants.

THE CHANCELLOR : — This bill is filed under the Code, sec. 4288, by the complainant, as a creditor of the defendant A. M. Tennison by note for $4,000, to set aside certain conveyances of property made by Tennison to his co-defendants, upon the ground of fraud, and to subject the property to the satisfaction of complainant's debt. One of these conveyances is a deed of gift of realty to defendant Tennison's wife, made on November 29, 1875. Another conveyance is of Tennison's interest in a stock of goods to his son-in-law and co-defendant, Peden, made on April 9, 1878. A third conveyance is of property, real and personal, made on the same day to defendant Byrne, in trust for creditors, without distinction. Part of the property thus conveyed purports to be the undivided interest of Tennison as a partner of defendant N. D. Ellis, and the bill further charges that the claim of Ellis is pretended and fraudulent. The bill prayed and obtained an attachment and injunction,

VOL. III — 41

the complainant taking the oath prescribed for poor persons. The case is before me on several motions made by the defendants.

The defendant Byrne moves to dismiss the bill for want of equity on its face so far as he is concerned. The ground of the motion is, that although the bill charges the deed to be fraudulent, yet it sets out no facts upon which the charge can be sustained. The statement of facts touching this conveyance is meagre, and the nature of the conveyance, being for the benefit of creditors, is not such as to raise an implication of fraud. But the conveyance includes the notes received from the defendant Peden for the alleged fraudulent sale of the stock of goods, and also the undivided interest of Tennison in the property held in common with Ellis, also implicated in the allegations of fraud. The trustee is, therefore, a necessary party to the suit. The deed, too, is charged to have been made on the same day as the sale to Peden, and as part of a general scheme of fraud. Under these circumstances, although the allegations are meagre and not very strong, I am inclined to think they are sufficient to sustain the bill against a motion to dismiss.

The other defendants move to dismiss the bill for multifariousness and the misjoinder of parties. But the motion is clearly not well taken. "The interest and liability of defendants may be separate, and yet," as said by our Supreme Court, "they can be joined in the same suit," provided their liability flows from the same fountain, and their interests radiate from some common centre. *Johnson.* v. *Brown,* 2 Humph. 328. And the authorities all recognize the case before us as falling within the rule where a debtor conveys, at different times and independently, distinct portions of his property to several persons, in fraud of the rights of his creditors. *Fellows* v. *Fellows,* 4 Cow. 682; *Boyd* v. *Hoyt,* 5 Paige, 77; *Randolph* v. *Daly,* 1 C. E. Green, 312; *Moses* v. *Brodie,* 1 Tenn. Ch. 398; *Woodward* v. *Hall,*

2 Tenn. Ch. 167. And I cannot see that an attachment, which, like an injunction or a receiver, is a mere incident, to the litigation, can affect the rule.

Another motion is, to modify the fiat, or the attachment, and injunction, based on the fact that all the property mentioned in the bill has been attached, and is largely more than sufficient to secure the complainant's demand. In any case of attachment, even where the rights of the defendants are protected against groundless seizure by the usual bond required to be executed by the complainant previous to the issuance of the writ, all that the complainant is reasonably entitled to is security for his debt. More than that can be of no benefit to him, and may grievously oppress the debtor. Our Supreme Court have recognized the writ of attachment, although clearly not within the letter of the law which gives to poor persons the benefit of legal process upon taking a prescribed oath, as within its spirit. *Barber* v. *Denning*, 4 Sneed, 267; *Robb* v. *Parker*, 4 Heisk. 72. Yet poverty, while it may justly entitle a party to the benefit of particular remedies without the usual burdens, can confer no greater right. And where the defendant is deprived of the protection which the law ordinarily intends to throw around him, it behooves the courts and judges to be sedulous in providing that such extraordinary process shall not operate oppressively.

By the Code, sec. 3473, it is provided that process of attachment shall command the sheriff to attach the *estate* of the defendant, or so much thereof as shall be of value sufficient to satisfy the debt or demand, and the costs of the complaint. The next section gives the form of the writ of attachment, and that commands the sheriff to attach so much of the estate of the defendant as will be of value sufficient to satisfy the debt and costs, according to the complaint. The fiat in this case is in strict conformity with section 3473. The attachment is not before me, and therefore I cannot see whether it corresponds with the form. It

has probably adhered literally to the fiat, without pursuing the words of the form, and the sheriff seems to have construed it as requiring him to levy on all the property mentioned, and made his levy accordingly. But the Code, sec. 3499, expressly provides: "If the officer make an excessive levy, he shall be liable as in case of excessive levy by execution." And an excessive levy is, of course, one which seizes largely more of the property or "estate" of the defendant than is necessary to secure the debt and costs.

A suit against the sheriff for an excessive levy might, however, prove both costly and dilatory, and I think it clearly within the competency of the court to see that its process is not used oppressively. The Code has provided for the exigency. Section 4451 is: "Chancellors may, as well in vacation as in term, examine the proceedings under extraordinary process, upon the answer of the defendant or upon petition and affidavit, and discharge or reduce any levy or bond, reasonable notice of the application being given to the other side." If, therefore, the attachment in this case has been levied upon more property than is required for the security of the complainant, the mode of proceeding to relieve the defendant is plainly pointed out. The facts must be brought before me in the manner prescribed. But it may be done at any time, upon one day's notice to the complainant, or his solicitor.

Ordinarily, where the attachment is general against the "estate" of the defendant, the complainant may, by direction to the officer, elect what part of that "estate," sufficient to cover his debt and costs, shall be levied upon. If he give no direction, it is the duty of the sheriff to levy upon so much of the estate, and no more. The fact that the attachment specifies the particular property sought to be attached as the estate of the defendant cannot alter the rule. The right of the complainant, in either case, is only to attach so much of the property as will be sufficient to cover

the complainant's demand and the costs of the cause. If the officer make an excessive levy, and the defendant applies to reduce it, I think the complainant is entitled to elect on what part of the property attached he prefers to fix his lien, and this whether that property be claimed by one or by several persons. In the eye of the law, upon the allegations made, the whole property constitutes the " estate " of the debtor, and the creditor has a right to an attachment of so much of it, and no more. If the complainant refuse to elect, the defendant is nevertheless entitled to a reduction of the levy, and the court must make the reduction with the best lights afforded. Of course, little difficulty would be presented where the property was claimed by the same defendant. In that case, it would be easy to ascertain the value of the property, and to limit the levy accordingly, preferring personal property to realty. If the property consist of realty and personalty claimed by different defendants, there would be more difficulty. For, to select the property of one defendant upon which to fix the burden, and thereby discharging all the other defendants, would be inequitable as a judicial act. As at present advised, I think the court should, in such case, reduce the levy in such way as to equalize the burden upon the property of each defendant. Thus, in the case before us, the bill seeks to reach, and the attachment seems to have been levied upon, property conveyed to and claimed by four different defendants, Mrs. Tennison, Peden, Byrne, and Ellis. The complainant's debt is $4,000, and if we reduce the levy on the property of each of these defendants to $1,000, or thereabouts, to cover costs and contingencies, if each be worth that much, we will have attained the nearest approximation to equality of burden among the defendants, without prejudice to the complainant's right, that is practicable under the circumstances. The practice is, however, unsettled under the statute, and I will hear further argument on the point, if desired by either side, when the application for a reduction of the levy is properly before me.

Beyond all question, in no event is the complainant entitled to levy upon more of the property of any one defendant than an amount sufficient to cover his debt and costs; and if more has been levied upon, the officer may release it, and the court will release it on a proper showing of the fact. The injunction was only intended to operate on the property actually attached, and will, of course, be dissolved to the extent of the property discharged from the attachment.

Each defendant is entitled to replevy so much of the property attached as he claims, by giving the required bond, without in any way making himself responsible for the property or the conduct of any other defendant. If, instead of replevying the property, he prefers to leave it in the custody of the court, and is willing to act as receiver without charge, I see no objection to his appointment, upon his giving the necessary bond. The defendant in an attachment suit is like the mortgageor in possession upon bill to foreclose, and, in such case, the rule is to leave him in possession, or to appoint him receiver upon giving good security, in the absence of any thing tending to show that this course would, in the particular instance, be improper. *Williams* v. *Noland*, 2 Tenn. Ch. 155; *Todd* v. *Rich*, 2 Tenn. Ch. 107.

The motions made must all be overruled. But the defendants may, upon answer or petition, bring before the court any matter touching the reduction of the levy, the replevy of the property, or the appointment of a receiver, as they may be advised, on twenty-four hours' notice to complainant or his solicitor.