(89 App. Div. 435.)

ROGERS v. WHEELER et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. SUIT FOR ACCOUNTING—CONFIDENTIAL RELATION—CONTRACT FOR INVESTMENTS IN TAX SALES.

By a contract of agency made in 1860, the agent was to invest a principal's money in lands sold for taxes, transact all of the business connected therewith, pay over semiannually a part of the interest, and retain the balance as his commission and in consideration of his guaranty. Under the tax scheme then existing (Laws 1860, p. 250, c. 158, § 1, amending section 29, Consolidation Act 1854, p. 880, c. 384), property was sold for the lowest term of years that would secure payment of the taxes by the purchaser. Any person interested might redeem within two years by paying the purchase money, subsequent taxes, and 15 per cent. interest. By Consolidation Act 1854, p. 881, c. 384, § 33, if there was no redemption, the purchaser received a conveyance. *Held*, that the contract created a confidential relation justifying a suit in equity for an accounting.

2. SAME—SINGLE CAUSE OF ACTION.

A contract of agency by which the agent was to invest the principal's money in realty sold for taxes, transact all business connected therewith, pay over semiannually a part of the interest, and retain the balance as commission and consideration for his guaranty, was made binding on his executors, administrators, and assigns. The venture was continued many years after the agent's death by a succession of personal representatives, also acting under their individual agreements with the principal. *Held*, that a suit for an accounting against the persons finally assuming the agent's functions presented but one cause of action, whether their obligation was deemed to arise from their official succession or from their individual agreements.

**3. SAME—JOINDER.**

Code Civ. Proc. § 484, subd. 9, provides that a plaintiff may unite two or more causes of action where they are brought on claims arising out of transactions connected with the same subject of action. *Held*, that a suit for an accounting brought against the successors in trust of an agent to invest and care for funds of the principal, who had assumed and discharged the agent's duties, was within the statute.

**4. SAME.**

Code Civ. Proc. § 1815, authorizes action against an executor or administrator, both personally and in his representative capacity, where the causes of action grew out of transactions connected with the same subject of action, and do not require different modes of trial. *Held*, that a suit for an accounting against the successors of an agent to invest and care for the principal's funds, who had assumed and discharged the agent's functions both by virtue of their official capacity as personal representatives of him and his representatives, and also by virtue of individual agreements with the principal, was within the statute.

Appeal from Special Term, Kings County.

Action by Cornelia H. B. Rogers against Philip M. Wheeler and another, individually, and as executors of the estate of Lucy E. Stoddard, deceased, and John W. Sweeney, as executor of the estate of George S. Wheeler, deceased. From interlocutory judgments sustaining demurrers to the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, and HIRSCHBERG, JJ.

John G. Agar, for appellant.
Albert G. McDonald, for respondents.

JENKS, J. These are appeals from interlocutory judgments sustaining demurrers. In 1860, Mr. A. S. Wheeler and the predecessor of the plaintiff made a contract in writing, to which there were two supplements. Mr. Wheeler was to invest the plaintiff's moneys in realty sold for unpaid taxes, to do all of the business connected with purchases and management, and to pay semiannually to the investor a proportion of the interest, retaining the balance thereof as his commissions and in consideration of his guaranty. The contract was made binding upon Mr. Wheeler's executors, administrators, and assigns. The venture was continued for many years after the death of Mr. A. S. Wheeler, and the defendants are the finals of the articulation of persons who, from time to time, and in succession, have managed the business. I think that the relations of Mr. Wheeler and of his successors involve elements of trust and confidence beyond those incident to those of naked agency. Under the tax scheme, as it existed in 1860, the property in arrears was sold for the lowest term of years possible that would secure the payment of the tax by the purchaser, and a certificate of such sale was issued. The owner, mortgagee, or other person interested, at any time within two years, might redeem the said land by paying to the collector for the use of the purchaser the said purchase money, plus subsequent taxes paid by the purchaser, with 15 per cent. per annum in addition. See section 1, c. 158, p. 250, Laws 1860, amending section 29, Consolidation Act 1854, p. 880, c. 384. If there was not redemption, then the purchaser received a conveyance. Section 33, c. 384, p. 881, Consolidation Act

1854. Thus, it is evident that one who paid over money for such investments, content with a provision that he should have a certain part of the legal interest earned or a percentage of the profits, necessarily left·much to the discretion, judgment, and business integrity of his agent, and so must have put faith and trust in him. There flows out of such enterprise divers purchases for different sums, redemptions at different times, receipts of interest for different periods, allowances for subsequent taxes, reinvestments in other purchases; in fine, the turning over of money in different amounts, with varying profits, at uncertain periods. It is hard to conceive a venture in which the agent has a freer hand and more exclusive knowledge of the actual profits, unless it be the so-called "blind pools" of the stockjobbers. The parties stand in a confidential relation, which justified the calling for and the rendition of an account in equity. As is said by Finch, J., in Marvin v. Brooks, 94 N. Y. 71, 75:

"Such a decree proceeds upon the ground that the defendant stands in the attitude of an agent dealing to some extent with the money or property of the other party, intrusted in a confidential relation with an interest which makes him a quasi trustee, and by reason of that relation knowing what the other party cannot know, and bound to reveal to him the entire truth."

See, too, Schantz v. Oakman, 163 N. Y. 148, 157, 57 N. E. 288.

It is unnecessary to trace throughout the succeeding changes in the scheme for the sales of lands for unpaid taxes; suffice it to say that, whatever they were, necessarily there must have been a reliance upon or confidence in the manager of the business. So far as the defendants Mr. Stoddard and Mr. Wheeler are concerned, their relation to the investment may thus be summarized: After Mr. A. S. Wheeler died, Mr. George S. Wheeler became his executor. Mr. A. S. Wheeler's wife, Nancy B. Wheeler, as his assignee and as his legatee and devisee, received the property, business, and assets in question, and in such capacity, and also by her own individual agreement with the plaintiff, carried on the business under the original contract. When she died, the said Mr. George S. Wheeler became her executor, and both as such, and by virtue of his individual agreement, carried on the business under the original contract. When he died, Mrs. Lucy E. Stoddard succeeded him as executor of Mrs. Wheeler, and as such, and by her individual contract, carried on the business. Upon the death of Mrs. Stoddard, the said defendants, Mr. Stoddard and Mr. Wheeler, became her executors, and as such, and by virtue of their own individual agreements, carried on the business. The investments and the business management, under the terms of the original contract, have been continued through the official and legal representatives of Mr. Wheeler and those who succeeded them, respectively, until the present day.

The defendants demur, saying that the plaintiff has attempted to unite two or more causes of action, in that she sets forth eight or nine separate causes of action against each individual and each representative in the succession stated. I am not prepared to admit that there are two or more causes of action. The learned counsel for the appellant cites us to the discussion of a cause of action in Wiles v. Suydam, 64 N. Y. 173. In the opinion Church, C. J., com-

mends the discussion of Prof. Pomeroy upon this subject. That discussion is long and learned, and cannot be presented or summarized in this opinion, but I make this quotation from that author's work on Code Remedies:

"The result of this analysis of the necessary elements which enter into every action is simple, easily to be understood, and yet exceedingly important; and the principle I have thus deduced will serve as an unerring test in determining whether different causes of action have been joined in a pleading, or whether one alone has been stated. If the facts alleged show one primary right of the plaintiff, and one wrong done by the defendant which involves that right, the plaintiff has stated but a single cause of action, no matter how many forms and kinds of relief he may claim that he is entitled to, and may ask to recover; the relief is no part of the cause of action. In applying this test, however, it must be observed that the single primary right and the single wrong which, taken together, constitute the one cause of action, may each be very complicated. For example, the primary right of ownership includes not only the particular subordinate rights to use the thing owned in any manner permitted by the law, but also similar rights to the forbearance on the part of all mankind to molest the proprietor in such use. The facts which constitute the delict complained of may embrace not only the wrongful obtaining and keeping possession, in such a case as the one last supposed, but also the procuring and holding deeds of conveyance, or other muniments of title, by which such possession is made possible and to appear rightful. These suggestions are necessary to guard against the mistake of supposing that a distinct cause of action will arise from each special subordinate right included in the general primary right held by the plaintiff, or from each particular act of wrong which, in connection with others, may make up the composite but single delict complained of."

See, too, Donnelly v. Lambert, 62 App. Div. 189, 191 et seq., 70 N. Y. Supp. 963; Skidmore v. Collier, 8 Hun, 50; Day v. Stone, 15 Abb. Prac. (N. S.) 137; Haines v. Hollister, 64 N. Y. 1.

It may well be said that the facts alleged show one primary right, namely, that of an accounting for this fund, and one wrong done by the defendants, namely, the failure to account for it after having it in their charge. All that the plaintiff seeks is an accounting. It is immaterial that others may heretofore have had it in their charge, so long as the defendants ultimately came into its possession with the liability to account, and whether the obligation arises from their official succession, or that coupled with their individual agreement is simply a question of their grounds of liability. The distinction between liability founded upon the obligation of the defendants in their representative capacities and perforce their individual agreements need not obtain in this case.

In Fellows v. Fellows, 4 Cow. 682, 698, 15 Am. Dec. 412, Woodworth, J., says:

"I am clearly of opinion that this is not a case within the rule relied on by the appellant, but must be considered as falling within that class of cases where there is a common interest among all, centering in the point in issue in the cause. Lord Redesdale, in Whaley v. Dawson, 2 Sch. & Lefr. 370, observed that in the English cases where demurrers, because the plaintiff demanded in his bill matters of distinct natures against several defendants not connected in interest, have been overruled, there has been a general right in the plaintiff covering the whole case, although the rights of the defendants may have been distinct. In such cases, the court proceeds on the ground of preventing multiplicity of suits where one general right is

claimed by the plaintiff against all the defendants. A demurrer lies where the subjects of the suit are in themselves distinct. Here the subject is the property of John Fellows in the hands of the defendants. The case does not afford ground for a demurrer within the authorities cited."

See, too, New York & New Haven R. R. Co. v. Schuyler, 17 N. Y. 592, 606; Mahler v. Schmidt, 43 Hun, 512.

But let us assume that there is more than one cause of action; nevertheless, I am of opinion that they can be united under subdivision 9 of section 484 of the Code of Civil Procedure, because they arise out of transactions connected with the same subject of action. "Transaction" means "the doing or performance of any business, the management of any affair." Bouvier, Law Dict. Prof. Pomeroy adopts and approves the definition of Worcester: "The act of transacting or conducting any business; negotiation; management; a proceeding." Pomeroy, Code Remedies, § 473. The Century Dictionary defines the word as "the management or settlement of an affair; the doing or performing." The words "subject of action" in their present significance are, I think, well defined in McKinney v. Collins, 88 N. Y. 216, 221, where the court, per Danforth, J., say:

"What do the words 'subject of the action' mean? That they are words of limitation and qualification is plain from the language of both subdivisions 3 and 4 [Laws 1849, p. 643, c. 438, § 135]. Evidently, they are not identical with the words 'cause of action,' and are not satisfied when the court has before it merely the obligation of a contract. They seem to have relation to some property or thing concerning which the proceeding is instituted and carried on, and the changes to be effected by it. Similar words are found in section 167 (formerly section 143 [Laws 1848, p. 525, c. 379]), as amended by Laws 1852 [p. 655], c. 392, providing that the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they all arise out of the same transaction or transactions connected with the same 'subject-matter.' "

True, very learned judges have handled the phrase gingerly, e. g., Comstock, J., in New York & New Haven R. R. Co. v. Schuyler, 17 N. Y. 592, and Church, C. J., in Wiles v. Suydam, 64 N. Y. 173. Prof. Pomeroy, after his general discussion, concludes as follows:

"I can conceive of no other interpretation which will apply to the phrase and meet all the requirements of the context. 'Subject-matter of the action' is not the 'cause of action' nor the 'object of the action.' It rather describes the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted. It is possible, therefore, that several different 'transactions' should have a connection with this 'subject-matter,' or, what seems to me to be the same thing, with this 'subject of action.' The whole passage is, at best, a difficult one to construe in such a manner that any explicit and definite rule can be extracted from it. I remark, in bringing this analysis of the language to a close, that the latter clause of the subdivision—'or transactions connected with the same subject of action'—can probably have no application to legal causes of action, and can only be resorted to in practice as describing some equitable suits which involve extremely complicated matters. In fact, Mr. Justice Comstock's position is doubtless correct, that the entire subdivision finds its primary and by far most important application to equitable rather than to legal proceedings."

The plaintiff is suing but for an accounting under the original contract, alleging that upon the death of the original promisor it was

carried out by these defendants by virtue of their respective legal successions and their individual agreements.

But if it be further contended that there are causes of action against the defendants individually and as representatives, the answer is that section 1815 of the Code of Civil Procedure permits this, provided the causes arise out of transactions connected with the same subject-matter. I have heretofore attempted to show that such is the case. So far as the defendant Mr. Sweeney is concerned, it is alleged that he is the executor of the said Mr. George S. Wheeler (who was executor of both Mr. A. S. Wheeler and Mrs. Nancy B. Wheeler), who continued the business after her death, both as her executor and perforce of his individual agreement with the plaintiff. In equitable actions, the causes of action are not required "to affect all of the defendants to the same extent or in the same way." Gray v. Fuller, 17 App. Div. 29, 35, 44 N. Y. Supp. 887. The causes of action do not require a different mode of trial, forasmuch as they all center around an accounting for a specific investment in a particular business, and they are not inconsistent in that the defendants may have conducted the business either in their representative or their individual capacity.

The interlocutory judgment should be reversed, and the demurrer overruled, with costs, with leave to the defendants to plead. All concur.

---

(89 App. Div. 486.)

FREEDMAN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. CARRIERS—ASSAULT ON PASSENGER—DAMAGES—MITIGATION—INSTRUCTIONS.
    In an action against a street railway for an assault by a conductor, where the court instructed in the main charge that provocation by plaintiff might be considered in mitigation of damages, but subsequently refused to charge, at defendant's instance, that the jury might render nominal damages if plaintiff aggravated the conductor into an assault, and on the contrary stated that the plaintiff was entitled to recover actual compensation, however much the conductor might have been irritated by plaintiff, the subsequent language of the charge being controlling on the jury, the charge was error.

Appeal from Trial Term, Kings County.